UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL L. ODOM, | : | 1:13-CV-01594 |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| GREGORY MOREHEAD, *et al.*, | : | |
| Defendants | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Michael Odom, claims that the defendants violated his constitutional rights and violated state law in connection with an arrest. One of the two remaining defendants filed a partial motion to dismiss the complaint. Even after the Court ordered Odom to file a brief in opposition to that motion, he has failed to do so. In fact, Odom has not participated in this action since he began the case in June 2013. After analyzing the applicable factors, we conclude that the partial motion to dismiss should be granted and that the case should be dismissed based on Odom's failure to prosecute this action.

**II. Background and Procedural History.**

Odom commenced this 42 U.S.C. § 1983 case by filing a complaint and an application for leave to proceed *in forma pauperis*.[1] He names the following two officers as defendants: 1) Gregory Morehead, an officer with the Cumberland Township Police Department; and 2) Barry Hockley, an officer with the Pennsylvania State Dog Law Enforcement Bureau. Odom also named Cumberland Township as a defendant. Odom alleges the following facts in his complaint.

In June of 2011, defendant Hockley approached Odom about a dog that had been found in the area of Odom's home. Odom alleges that, although the dog belonged to his brother, he agreed to accept any applicable citations or fines for the dog. Hockley then stated that he would give Odom a fine based on the dog not having the required shots and that he would give Odom until the end of the day to obtain a license for the dog. According to Odom, after thanking Hockley and advising him of his intent to secure a license for the dog, he noticed a large insect

---

1  When he began this action, Odom was a state prisoner. A short time after Odom filed this action, the Pennsylvania Department of Corrections informed the Court that Odom had been released from custody. *See Doc. 8.*

land on Hockley's abdomen, and Odom extended his right arm and index finger to point out the insect to Hockley.  Then, according to Odom, defendant Morehead lunged at him and shoved him violently to the ground causing him to land on his back in the gravel and to slide several feet into the wet grass.  Tempers flared.  Odom asked Morehead why he had shoved him, and Morehead replied: "You don't touch an officer of the law."  According to Odom, he had not touched nor attempted to touch Hockley, and after advising the officers that he wished to contact the state police to investigate the incident, he turned to walk toward his home.  Morehead then yelled that he is the police and ordered Odom to come back.  According to Odom, as he turned to obey, Morehead violently grabbed him and forced him up against Hockley's vehicle, handcuffed him, and arrested him.  In response to Odom's question about why he had been arrested, Morehead allegedly stated: "I don't like you[,] you piece of shit, and I don't want you living in my township.  Your nothing but a worthless drunk."  This escalated things further, and, according to Odom, he lashed out verbally and told Morehead that he wished that he owned an AR-15 because, if he did, he would put a bullet in the back of his head.

3

After transporting Odom to the Cumberland Township Police Department, Morehead placed Odom into a holding cell, and, according to Odom, after a brief verbal exchange, Morehead entered the cell and assaulted him by shoving him and punching him in the neck.  Odom alleges that Morehead knew him prior to this incident because of two prior incidents involving him and his brother.

Odom alleges that Morehead charged him with simple assault and terrorist threats.  Bail was set at $10,000, and Odom was taken to the Adams County Adult Correctional Facility.  Odom alleges that due to Morehead's version of the events, the District Attorney's Office increased the simple assault charge to two counts of felony aggravated assault.  According to Odom, throughout the proceedings, defendants Morehead and Hockley made multiple false and inconsistent statements about Odom assaulting or attempting to assault Hockley.  In October of 2011, the District Attorney's Office allegedly withdrew the assault charges, and Odom pleaded guilty to making terroristic threats with respect to his threat to defendant Morehead.

Odom claims that defendants Morehead and Hockley falsely arrested and maliciously prosecuted him, that Morehead used excessive force on him, and that Morehead and Hockley committed state law torts in connection with his arrest and prosecution. He claims that defendant Cumberland Township is vicariously liable for the conduct of defendant Morehead under the doctrine of respondeat superior and that the Township failed to properly train Morehead. He seeks declaratory relief as well as compensatory and punitive damages.

After reviewing the complaint in accordance with the 28 U.S.C. § 1915A, we recommended that Odom's application to proceed *in forma pauperis* be granted, that that claims against Cumberland Township be dismissed, and that Odom be granted leave to file an amended complaint to attempt to state a claim upon which relief may be granted against Cumberland Township. Chief Judge Conner adopted that Report and Recommendation, and he gave Odom 20 days to file an amended complaint. But Odom never filed an amended complaint. After Odom failed to file an amended complaint, we ordered that the complaint be served on defendants Morehead and Hockely.

In December of 2013, defendant Morehead filed a partial motion to dismiss the complaint and a brief in support of that motion.  Morehead moved to dismiss all the claims against him except the excessive force claim.  We ordered Odom to file, on or before December 27, 2013, a brief in opposition to Morehead's motion to dismiss.  Odom failed to comply with that order.  Noting that Odom had not filed anything since he began this case and that if a plaintiff fails to prosecute an action or to comply with an order, the Court may dismiss an action pursuant to Fed.R.Civ.P. 41(b), in early June of 2014, we again ordered Odom to respond to the motion to dismiss.  We ordered that he respond on or before June 19, 2014.  We warned Odom that if he failed to do so, we may deem him to have adandoned this lawsuit, and we may recommend that the action be dismissed pursuant to Fed.R.Civ.P. 41(b).  Still, Odom did not respond.   From Odom's failure to respond and to prosecute this action even after being explicitly warned that failure to do so may result in dismissal, we conclude that Odom has abandoned this case.  And after considering the relevant factors, we recommend that the case be dismissed.

### III. Discussion.

**A. Under the Rules of this Court, Odom Should Be Deemed Not to Oppose the Motion to Dismiss.**

At the outset, under the Local Rules of this court, Odom should be deemed not to oppose defendant Morehead's partial motion to dismiss since he has failed to timely oppose the motion or otherwise litigate this case. Odom's repeated procedural defaults frustrate and impede efforts to resolve this matter in a timely and fair fashion.

Local Rule 7.6 imposes an affirmative duty on a litigant to respond to motions and provides that "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion." At the time that he filed his complaint, Odom received a copy of the Court's Standing Practice Order, which warned him in clear and precise terms of the consequences that would flow from failure to comply with Local Rule 7.6 and briefing schedules set by the Court:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing

7

party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

*Doc. 5* at 2.   In this case, Odom has not complied with Local Rule 7.6 or this Court's orders to respond to the defendant's motion.   These procedural defaults compel us to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1.   Often that will mean that courts should strive to resolve cases on their merits whenever possible.   However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion. . . ."

*Lease v. Fishel,* 712 F.Supp.2d 359, 371 (M.D.Pa. 2010)(quoting *McCurdy v. American Bd. of Plastic Surgery,* 157 F.3d 191, 197 (3d Cir. 1998)).   With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.   A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be

placed before the court in a timely fashion.'" *Id.*   Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

Such basic principles of fairness apply here.   In this case, Odom has failed to comply with Local Rule 7.6, he has failed to file a brief in opposition to the defendant's motion even after being ordered to do, and he has failed to prosecute this action.   These failures now compel us to deem Odom to not oppose the motion to dismiss and to have abandoned this case.

Nevertheless, Odom's failure to file a brief in opposition alone is not sufficient for the court to dismiss the case.   In *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), the Third Circuit reversed a district court's dismissal based on the *pro se* plaintiff's failure to file a brief in accordance with a local rule of court. The Third Circuit stated that failure to obey the local rule should not form the basis for dismissal without an analysis of the merits of the case. *Id.* at 30.   It noted that dismissal was not to be ruled out if the party was represented by an attorney and in fact did not oppose the motion. *Id.*   It also noted: "Nor do we suggest that if a party

9

fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked.  Thus, our holding is not broad." *Id.* at 30.

Although this caveat from the *Stackhouse* case might suggest that we could grant the motion to dismiss in this case based on Odom's failure to file a brief in opposition after being ordered to do so by the Court, the Third Circuit has subsequently declined "to adopt an interpretation of *Stackhouse* under which a district court may dismiss a case solely because a plaintiff misses a briefing deadline set forth in a local rule or court-ordered briefing schedule." *Hernandez v. Palakovich,* 293 F.App'x 890, 895 (3d Cir. 2008).  Rather, the Third Circuit has held that before dismissing a case as a sanction for failure to follow a court rule or court order, a court must consider the factors set forth in the seminal *Poulis* case. *Id.* at 894 (citing *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d Cir. 1984)); *see also Shuey v. Schwab,* 350 F.App'x 630, 633 (3d Cir. 2009)("*Poulis* has been cited too often and is too deeply ingrained in the jurisprudence of this court and the district courts of this circuit for a court to assume that a party's failure to respond to a motion to dismiss can be regarded as an abandonment of the claim.  *Poulis*

10

governs the District Court's decision to dismiss the Shuey's claim, and it was error to dismiss without first considering the *Poulis* factors."). Thus, we turn to a consideration of the *Poulis* factors.

### B. Consideration of the *Poulis* Factors Warrants Dismissal of this Case.

If the plaintiff fails to prosecute a case or to comply with court rules or court orders, pursuant to Fed.R.Civ.P. 41(b), the Court may dismiss the action upon a motion by the defendant. Even though dismissal is an available sanction, it is a drastic sanction that "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel College,* 296 F.3d 184, 190 (3d Cir. 2002). But that discretion, while broad, is governed by the following factors, commonly referred to as *Poulis* factors, which the Court must balance in deciding whether to dismiss a case:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis,* 747 F.2d at 868.   No single factor is dispositive, *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008), and each factor need not be satisfied for the court to dismiss an action, *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 221 (3d Cir. 2003).   In this case, an assessment of the *Poulis* factors weighs heavily in favor of dismissing this action.

The first *Poulis* factor is the extent of the party's personal responsibility.   A *pro se* litigant is personally responsible for failure to comply with the Court's rules and orders.   In this case, Odom is proceeding *pro se,* and so he is responsible for his failure to file a brief in opposition to the defendant's motion.   The delays in this case are attributable to Odom, who has failed to comply with the court rules and court orders and has neglected to litigate this case.

The second *Poulis* factor is prejudice to the adversary.  Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).  Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware,* 322 F.3d at 222.  "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id.*  In this case, Odom's failure to litigate this case and comply with court rules and court orders frustrates and delays resolution of this action, and so, such failure to litigate can be seen to prejudice the defendants, who seek a timely resolution of the case.

The third *Poulis* factor is a history of dilatoriness.  While "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe,* 538 F.3d at 261, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trs. of N.J. Brewery*

13

*Emps.' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). A "party's problematic acts must be evaluated in light of [her] behavior over the life of the case." *Id.* at 875. In this case, Odom has a history of dilatoriness. He failed to file a brief in opposition to the currently pending partial motion to dismiss. Moreover, he failed to do so even though the Court twice ordered him to do so and even though he was explicitly warned that if he fails to do so, the Court may deem him to have abandoned the case. He also failed to in any way participate in this case for more than a year.

The fourth *Poulis* factor is whether the conduct was willful or in bad faith. "Willfulness involves intentional or self-serving behavior." *Adams,* 29 F.3d at 875. Here, Odom was ordered to file a brief in opposition to the pending motion to dismiss, and he had been informed of the possible consequences of failing to do so. Still, he did not file a brief in opposition. Nor did he communicate with the Court in any manner since filing this action. Odom's silence and complete failure to litigate this action lead to an inference that he has willfully abandoned this case.

The fifth *Poulis* factor is the effectiveness of alternate sanctions. Dismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal. *Poulis,* 747 F.2d at 868. Odom is proceeding *pro se* and *in forma pauperis*, and there is no evidence to support a reasonable inference that he would be able to pay monetary sanctions. Therefore, monetary sanctions, including attorney's fees and costs, would not be an effective sanction in this case. Moreover, Odom's complete failure to contact that Court within the last year leads to an inference that further orders to him would not be effective. In this case, no sanction short of dismissal would be effective.

The sixth *Poulis* factor is the meritoriousness of the claim. In this inquiry, a claim will be deemed meritorious when the allegations of the complaint, if established at trial, would support recovery. *Poulis,* 747 F.2d at 870. Even though Odom has presented a meritorious excessive force claim, in our view consideration of this factor cannot save Odom's claims, since Odom is now wholly noncompliant with his obligations as a litigant. In any event, defendant Morehead has presented meritorious reasons for dismissing many of the claims against him.

In sum, the *Poulis* factors weigh heavily in favor of dismissal. Odom has been released from prison and he has abandoned this case. Thus, we will recommend that the Court grant the partial motion to dismiss filed by defendant Morehead, and we will further recommend that the Court dismiss the entire action.

## IV. Recommendations.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that defendant Morehead's partial motion (doc. 15) to dismiss be granted and that the entire case be dismissed pursuant to Fed.R.Civ.P. 41(b).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

16

made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of July, 2014.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge